Case 3:22-cv-00006   Document 26   Filed on 09/19/22 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
September 19, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:22-cv-6

ERLC, LLC., *Plaintiff*,

v.

Blue Cross Blue Shield of Texas, *et al.*, *Defendants*.

## MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, *United States District Judge*:

Before the court is the plaintiff's motion to remand. Dkt. 10. The court grants the motion.

## I. BACKGROUND

In February 2020, the plaintiff, ERLC, provided emergency medical service to Guadalupe Guzman. Dkt. 1-2 ¶ 8 (First Amended Petition). Guzman was insured by Health Care Service Corporation d/b/a Blue Cross Blue Shield of Texas ("Blue Cross"). *Id.* Blue Cross considered ERLC an "out-of-network" provider. *Id.* After providing care, ERLC billed Blue Cross and Guzman $90,473.01. *Id.* ¶ 9. Blue Cross accepted coverage but paid just $466.50. *Id.* ¶ 10. Guzman paid $412.50. *Id.*

Blue Cross has since refused to pay the balance. *Id.* ERLC and Blue Cross participated in the Texas Insurance Code's mandatory mediation process, but they failed to agree on the amount owed. *Id.* ¶ 11.

ERLC sued Blue Cross and Guzman in state court alleging: (1) breach of contract by Blue Cross; (2) violations of the Texas Insurance Code; (3) breach of implied contract; and (4) breach of contract by Guzman. Dkt. 1-2 at 3–5.

Blue Cross timely removed, alleging both federal-question and diversity jurisdiction. Dkt. 1 at 3, 6. It argues ERLC's claims are completely preempted by the Employee Retirement Income Security Act ("ERISA") and, in the alternative, that diversity jurisdiction exists because Guzman was fraudulently joined. *Id.* ERLC has moved to remand. Dkt. 10.

## II. LEGAL STANDARD

### A. Federal-Question Jurisdiction

Federal courts have original jurisdiction over cases and controversies that arise "under the Constitution, the laws, and the treaties of the United States." 28 U.S.C. § 1331. To trigger this jurisdiction, the plaintiff must state a claim that is federally created. *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914). However, a cause of action brought under state law may be removed to federal court if a federal statute "wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat. Bank v. Anderson*,

539 U.S. 1, 8 (2003).

"In enacting ERISA, Congress created a comprehensive civil enforcement scheme for employee welfare benefit plans that completely preempts any state law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy." *Spring E.R., LLC v. Aetna Life Ins. Co.*, No. CIV.A. H-09-2001, 2010 WL 598748, at *2 (S.D. Tex. Feb. 17, 2010) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). "Complete preemption converts a state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions into 'one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 579 F.3d 525, 529 (5th Cir. 2009)).

For a state-law cause of action to be completely preempted by ERISA, the removing party must show that (1) the plaintiff had the ability to bring the claim under § 502(a)(1)(B), and (2) "there is no other independent legal duty that is implicated by the defendant's actions." *Davila*, 542 U.S. at 210.

### B. Diversity Jurisdiction

Federal courts also have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and there is complete diversity of citizenship among the litigants. 28 U.S. § 1332. But the joinder of defendants just for the purpose of destroying complete

diversity among the parties–improper joinder—does not destroy federal jurisdiction.[1] *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). To show improper joinder, the removing party must prove either that the plaintiff (1) has no possible claim against the in-state defendant or (2) pleaded fraudulent jurisdictional facts. *Smallwood,* 385 F.3d at 573. A claim against an in-state defendant that would survive a Rule 12(b)(6) challenge is generally enough to disprove improper joinder. *Id.* To determine whether joinder has been improper, the court "must resolve all ambiguities in the controlling state law in the plaintiff's favor." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

## III. ANALYSIS

### A. Federal-Question Jurisdiction

Blue Cross contends that ERISA completely preempts ERLC's breach claims.

---

[1] The Fifth Circuit has "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,'" but "there is no substantive difference between the two terms." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (*en banc*). Accordingly, the court uses the term "improper joinder" except when quoting other authorities.

### 1. ERLC Standing to Bring an ERISA Claim

ERLC argues that as it lacks standing to bring a cause of action under ERISA, the statute cannot preempt its claims. Dkt. 10 at 6–9. Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to the federal courts." 29 U.S.C. § 1001(b). A claim to "recover benefits" or "enforce rights under the terms of the plan" may only be brought by a "participant or beneficiary" of the plan. 29 U.S.C. § 1132(a)(1)(B). Medical providers do not have independent standing to sue under § 502(a)(1)(B). *Tango Transp. v. Healthcare Fin. Servs. LLC.*, 322 F.3d 888, 893 (5th Cir. 2005). Nevertheless, medical providers may derivatively bring a claim under ERISA if the ERISA plan beneficiary has assigned benefits to the healthcare provider. *Id.* A medical provider bears the burden to "demonstrate[e] by the preponderance of the evidence that there was such assignment." *Spring E.R.*, 2010 WL 598748, at *3.

The parties do not dispute that ERISA governs Guzman's insurance plan. Whether ERLC has standing to sue under ERISA squarely turns on whether Guzman assigned his benefits to ERLC. ERLC argues that it is not an assignee of the plan, and Blue Cross offers no evidence to support its

argument that a valid assignment from Guzman to ERLC occurred. Blue Cross has not shown a "written assignment of benefits" by Guzman to ERLC, which the plan requires before an assignment will be acknowledged. Dkt. 8-1 at 104. Furthermore, to prove an assignment of benefits, courts require more than mere provisional contract language—there must be evidence that the patient intended to assign his benefits to the healthcare provider. *Bailey v. Blue Cross & Blue Shield of Tex., Inc.*, No. 4:21-cv-0917, 2022 WL 1216308, at *5 (S.D. Tex. Jan. 14, 2022).

For example, the defendants in *Spring* provided: (1) printouts reflecting claims for benefits provided by the plaintiffs; (2) paper forms used by hospitals to submit claims of payment for healthcare expenses under patients' health benefit plan; and (3) a form signed by a patient that indicated to the healthcare provider that an assignment of benefits was being made. *Spring*, 2010 WL 598748, at *3.

Blue Cross offers no such evidence; it points only to the language of ERLC's First Amended Petition, which states that "ERLC is the assignee of the patients." Dkt. 1-2 ¶ 14. Blue Cross argues that "the only logical inference" to be drawn from the language "is that [the [p]laintiff has a valid assignment of Guzman's benefits." Dkt. 24 at 7. But that's not enough. By failing to provide evidence of a valid assignment of benefits, Blue Cross has not

sufficiently pleaded that ERLC has standing to bring an ERISA claim. The first prong of the *Davila* test is unsatisfied.

### 2. Independent Legal Duty Under Texas Law

Even if a valid assignment of benefits has been made, an independent duty under state law exists apart from ERISA. The relevant portion of the Texas Insurance Code provides:

> If an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for the following emergency care services at the usual and customary rate or at an agreed rate and at the preferred level of benefits until the insured can reasonably be expected to transfer to a preferred provider.

Tex. Ins. Code § 1301.155(b). This court has recently held that "[t]he disjunctive phrasing" of the statute "denotes that the two clauses impose distinct obligations." *ACS Primary Care Physicians Sw. P.A. v. United Healthcare Ins. Co.*, 479 F. Supp. 3d 366, 377 (S.D. Tex. 2020). Further, the Fifth Circuit has held that there is a distinction for the purposes of *Davila* between the "right to payment" versus the "rate of payment" when the underpayment claim does not implicate the ERISA plan. *Lone Star OB/GYN*, 579 F.3d at 530–31.

Blue Cross relies on *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), to bolster its argument that the relief ERLC seeks is preempted by ERISA. But *Pilot Life* is inapplicable. The *Pilot Life* court held the *denial of claims*

under an ERISA plan was completely preempted by ERISA. 481 U.S. at 48. But ERLC does not contend that Blue Cross denied any claim; rather, ERLC argues that Blue Cross "accepted coverage" for the services provided to Guzman but paid only $466.50 of the $90,473.01 billed. Dkt. 1-2 ¶¶ 9–10. Blue Cross does not explain why—in light of *Lone Star*—ERLC's lawsuit, which can be read to be a "rate of payment" case rather than "right to payment," implicates ERISA. 579 F.3d at 530; *ACS*, 479 F. Supp. 3d at 373.

Blue Cross has offered no evidence or arguments that this action arises out of a denial of coverage rather than a dispute over the rate of payment, which implicates a duty under Texas law to pay ERLC at the usual or customary rate. *Bailey*, 2022 WL 1216308, at *8.

Because Blue Cross has failed to satisfy the second prong of the *Davila* test, it cannot show ERLC's claim is completely preempted by ERISA. So there is no federal-question jurisdiction.

### B. Diversity Jurisdiction

Alternatively, Blue Cross argues that ERLC improperly joined Guzman in the lawsuit to destroy diversity.

To prove ERLC improperly joined Guzman, Blue Cross must show that ERLC cannot plead a valid claim under § 1301.155 of the Texas Insurance Code against Guzman. The relevant portion of the code reads:

> For emergency care subject to this section or a supply related to that care, an out-of-network provider or a person asserting a claim as an agent or assignee of the provider may not bill an insured in, and the insured does not have financial responsibility for, an amount greater than an applicable copayment, coinsurance, and deductible under the insured's preferred provider benefit plan that:
>
> (1) is based on:
>    (A) the amount initially determined payable by the insurer; or
>    (B) if applicable, a modified amount as determined under the insurer's internal appeal process; and
> (2) is not based on any additional amount determined to be owed to the provider under Chapter 1467.

Tex. Ins. Code § 1301.155(d).

Admittedly, there is no case law to support whether ERLC is able to "balance bill"[2] Guzman for the provided medical services.[3] Nevertheless, Blue Cross offers no convincing argument why ERLC has no claim against Guzman.

A reasonable interpretation of § 1301.155(d)(2) is that out-of-network providers may be able to bill the patients at a rate higher than the copayment,

---

[2] "Balance billing" refers to when the provider bills the patient for "an amount greater than an applicable copayment, insurance, and deductible." Tex. Admin. Code § 21.4903.

[3] The adoption of Senate Bill 1264 in 2019 greatly amended the Texas Insurance Code. The amendments applied to medical services provided on or after January 1, 2020. Neither the parties nor the court have been able to find a court of appeals or Texas Supreme Court decision on how the amended language should be interpreted.

coinsurance, or deductible when the dispute-resolution process determines the provider is owed an additional amount. Blue Cross is correct that this interpretation of the code would go against the purpose of the Senate Bill 1264, which amended the Texas Insurance Code to prohibit balance billing in most scenarios. Dkt. 24 at 15–19. However, Blue Cross's argument that the amended portions of the insurance code never allow a health-care provider to balance-bill a patient has no merit.

As Blue Cross admits, certain exceptions are carved out for non-emergency out-of-network care. Tex. Admin. Code §§ 21.4901, 21.4903. This indicates that the Texas Legislature did not intend to prohibit balance billing in all instances. Further, the Dallas Court of Appeals recently interpreted § 1271.155(g) of the Texas Insurance Code as "substantially limit[ing] the right of non-network providers to bill patients for the difference between the billed amount and the paid amount."[4] *Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 620 S.W.3d 458, 467 (Tex. App.—Dallas 2021, pet. granted). This indicates that the amended language still allows providers to balance-bill patients in some circumstances. While § 1271.155(g) applies to out-of-network care provided by health-maintenance organizations ("HMOs"), the

---

[4] While section § 1271.155(g) was not the main issue in the case, the court's dicta offers some guidance on how state courts may interpret the amended language in the Texas Insurance Code.

language is used in § 1301.155, which applies to out-of-network care provided by preferred-provider organizations ("PPOs"). "[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932). Consequently, one could conclude that because the two sections use the same language, there are some instances in which PPOs may bill patients for the provided services.

Ultimately, Texas courts may choose to adopt the interpretation offered by Blue Cross. But, for the purposes of diversity jurisdiction, this court must resolve any ambiguity in state law in favor of the non-removing party. *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003). Accordingly, ERLC may have asserted a claim against Guzman that could survive a Rule 12(b)(6) motion. Therefore, joinder of Guzman is not improper, complete diversity among the parties does not exist, and this court is without subject-matter jurisdiction.

\* \* \*

For the reasons stated above, the court grants the motion to remand. Dkt. 10. The clerk is ordered to transfer this case back to Galveston County Court at Law No. 3.

Signed on Galveston Island this 19th day of September, 2022.


_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE